UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:18-CV-80762-ROSENBERG/REINHART

JACOB HORN and ROBERT VETTER,
*individually and on behalf of all others
similarly situated, as assignees of iCan Benefit
Group, LLC, a Florida limited liability
company,*

    Plaintiffs,

v.

LIBERTY INSURANCE UNDERWRITERS,
INC.,

    Defendant.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon the Plaintiffs Jacob Horn and Robert Vetter's, ("Plaintiffs") Motion for Summary Judgment ("Plaintiffs' Motion"), DE 108, and accompanying Statement of Facts ("Plaintiffs' SOF"), DE 107, and Defendant Liberty Insurance Underwriters, Inc.'s ("Liberty"), Motion for Summary Judgment, ("Defendant's Motion"), DE 113, and accompanying Statement of Facts ("Defendant's SOF"), DE 111, both filed on March 8, 2019. The Court held a hearing on May 1, 2019. The Court has carefully considered the Motions, the parties' respective responses in opposition; DE 123, DE 124, DE 125, DE 127, DE 128; and replies in support of the Motions; DE 135, DE 137; and is otherwise fully advised in the premises.

### I. BACKGROUND

A. Underlying Class Action

On or about September 13, 2017, an underlying amended class action, styled *Jacob Horn et al v. iCAN*, Case No. 9:17-cv-81027-RLR, ("Class Action" or the "*iCan Action*"), was filed

against Liberty's insured, iCan Benefit Group, LLC ("iCan"). *See* Class Action Compl., DE 56-2. The Class Action asserted violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") against iCan. iCan is a "national direct response marketer and seller of insurance products." Def. SOF, ¶ 13.

Liberty issued a Private Advantage Insurance Policy to iCan Holding LLC, as a named insured. Policy, DE 56-1. On November 15, 2017, after reviewing the initial complaint in the Class Action, Liberty denied coverage to iCan. Def. SOF, ¶ 38. Liberty later denied coverage again after reviewing the amended Class Action complaint on the same bases as set forth in the original Denial Letter. *Id.* ¶ 41.

After Liberty's denial of coverage, the Class Action parties entered into a settlement agreement under the authority of *Coblentz v. American Surety Co.*, 416 F.2d 1059 (5th Cir. 1969) (the "*Coblentz* Agreement"). *See* Def. SOF, ¶ 42–45; Compl., DE 56, ¶ 21–24. Pursuant to the *Coblentz* Agreement, the parties agreed to enter into a consent judgment for $60,413,112.00 and agreed that the underlying Class Action plaintiffs would collect this judgment from Liberty; the underlying Class Action plaintiffs received an assignment of iCan's rights and interest in the Liberty policy. Compl., DE 56, ¶¶ 22–23; Consent J., DE 56-4.

B. The Instant Action

In this amended declaratory and breach of contract action, Plaintiffs, as assignees of the insured iCan, seek recovery of the consent judgment. Compl., DE 56. In order to enforce the consent judgment, the Plaintiffs must first establish coverage and a wrongful refusal to defend, which are the issues currently before the Court on the parties' cross-motions for summary judgment. Plaintiffs moved for summary judgment based on their argument that four exclusions did *not* apply: Exclusion B.4 (the "Invasion of Privacy Exclusion"), Exclusion B.6 (the "Unfair

Trade Practices Exclusion"), Exclusion A.6/Endorsement 13 (the "Willful Violation of Law Exclusion"), and Exclusion A.7/Endorsement 15 (the "Profit Exclusion"). Pl. Mot., DE 108. Based on the non-applicability of these exclusions, Plaintiffs argues they are entitled to summary judgment and a determination of a wrongful denial of coverage. *Id.*

Liberty in turn moved for summary judgment on the Invasion of Privacy Exclusion as well as Exclusion B.3 (the "Professional Services Exclusion"). Def. Mot., DE 113. Liberty argues that the *iCan Action* is excluded from coverage entirely, entitling it to summary judgment. *Id.*

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c), the summary judgment movant must demonstrate that "there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting

3

evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

"When the only question a court must decide is a question of law, summary judgment may be granted." *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011). "Contract and statutory interpretation are both questions of law appropriately decided on summary judgment." *Id.*

### III. INSURANCE CONTRACT CONSTRUCTION PRINCIPLES

Florida law requires that insurance contracts be given their clear and plain meaning and prohibits courts from rewriting contracts, adding meaning that is not present, or otherwise reaching results contrary to the intentions of the parties. *See, e.g.*, *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "Moreover, if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id*. A contract is ambiguous only when it is susceptible to two or more reasonable interpretations. *Cont. Cas. Co. v. Wendt,* 205 F.3d 1258, 1261 (11th Cir. 2000).

### IV. DISCUSSION

A. <u>The Liberty Policy</u>

The Liberty policy provides, in pertinent part:

> The Insurer shall pay on behalf of the Company Loss which the Company becomes legally obligated to pay by reason of any Claim first made against the Company during the Policy Period or the Discovery Period, if exercised, for any Wrongful Acts by the Company taking place prior to the end of the Policy Period.

Policy, DE 56-1, 14. The Policy also specifically defines "Claim" as "a written demand against any Insured for monetary damages or other relief" or "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading" (among other things). *Id.* at 15–16, 40. A "loss" is defined as "the amount which the Insureds become legally obligated to pay on

4

account of any Claims made against them for Wrongful Acts for which coverage applies, . . . including but not limited to damages, . . . and Defense Costs." *Id.* at 15– 16, 37. A wrongful act is defined as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by any of the Insured Persons in their capacity as such, . . .or, with respect to Clause C, by the Company, . . . " *Id.* 17.

The disputed exclusions to the policy are as follows:

### IV. EXCLUSIONS
. . .
B.     The Insurer shall not be liable under Insuring Clause C for Loss on account of any Claim made against the Company: . . .

. . .

3. based upon, arising out of, or attributable to the rendering of, or failure to render, any professional services for others, including, without limitation, services performed by the Insureds for or on behalf of a customer or client;

4. based upon, arising out of, or attributable to any actual or alleged defamation, invasion of privacy, wrongful entry and eviction, false arrest or imprisonment, malicious prosecution, abuse of process, assault, battery or loss of consortium;

. . .

6. based upon, arising out of, or attributable to any actual or alleged price fixing, restraint of trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Anti-Trust Act, Clayton Act, or any similar law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities;

Policy, DE 56-1, 19.

The policy also contains the following pertinent endorsements:

**ENDORSEMENT 13**
. . .
Section IV Exclusions A.6. is deleted in its entirety and replaced with the following:

Based upon, or arising out of, . . .any deliberately fraudulent or criminal act or omission or any willful violation of law by such insured if a judgment or other final

5

adjudication in the underlying action in such Claim or another proceeding establishes that such act, omission or violation occurred;

. . .

**ENDORSEMENT 15**

. . .

In consideration of the premium charged it is agreed and understood that EXCLUSION A.7 of the DIRECTORS, OFFICERS, AND COMPANY LIABILITY COVERAGE PART is deleted in its entirety and replaced with the following:

> 7. based upon, arising out of, or attributable to such Insured gaining in fact any profit, remuneration or financial advantage to which such Insured was not legally entitled if a judgment or other final adjudication in such Claim or other proceeding establishes that an Insured obtained such improper profit . . .

Policy, DE 56-1, 42, 45.

B. <u>The Invasion of Privacy Exclusion (Exclusion B.4)</u>

Liberty argues that since its policy broadly defines "Claim" as a "civil proceeding" and the Class Action alleged TCPA violations which caused actual harm to the class members in the form of invasions of privacy, among other harms, the entire lawsuit "arises out of" an invasion of privacy, as set forth in Exclusion B.4. *See Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.*, 913 So. 2d 528 (Fla. 2005) (construing the phrase "arising out of" broadly).

Plaintiffs contend that Exclusion B.4 is inapplicable, because there were other allegations, in addition to invasion of privacy, contained within the *iCan Action's* Complaint. In other words, the allegations of invasionsof privacy were just one component of the underlying case. Moreover, Plaintiffs contend that they did not have to prove invasion of privacy in order to prevail in the Class Action since it is not an element of the TCPA cause of action.

As outlined above, the Policy's insurance is narrowed by certain exclusions, including the Policy's "Invasion of Privacy Exclusion," which bars coverage for "Loss on account of any Claim made against the Company . . . based upon, arising out of, or attributable to any actual or alleged . . . invasion of privacy[.]" DE 56-1, 19, § IV.B.4. Thus, the question before the Court regarding

6

this Exclusion is whether the underlying complaint, or some component of it is a Claim, which arose out of an invasion of privacy.

The Court begins by analyzing whether a violation of the TCPA should be construed as an invasion of privacy, and therefore excluded from coverage. Although Plaintiff points out that invasion of privacy is not an element of a TCPA violation, *see* 47 U.S.C. § 227(b), (c), the Court finds that a violation of the TCPA *may* in some circumstances be considered an invasion of privacy for the purposes of analyzing coverage in an insurance policy, for the reasons set forth below.

The Court first looks to the Florida Supreme Court's analysis of the nexus between the TCPA and invasion of privacy in *Penzer v. Transportation Insurance Company*. 29 So. 3d 1000 (2010). The *Penzer* court considered whether an insurance policy providing coverage for injuries arising out of "oral or written publication[s] of material that violates a person's right of privacy" would provide coverage when the insured was sued for TCPA violations. *Id.* at 1002. This question was certified from the Eleventh Circuit Court of Appeals. *Id.* The *Penzer* court acknowledged that "the source of the right of privacy is the TCPA, which provides the privacy right to seclusion." *Id.* at 1006. The court included a string citation, illustrating that the TCPA's purpose is grounded in protecting individuals' right to privacy: "The receipt of an unsolicited fax advertisement implicates a person's right of privacy insofar as it violates a person's seclusion. . . . Courts have consistently held the TCPA protects a species of privacy interest. . . . The harm occasioned by unsolicited faces involves protection of some sort of privacy. . . . The stated purpose of the TCPA…is to protect the privacy of individuals…" *Id.* (internal quotations and citations omitted). The court stated that "the policy provision provides coverage for a written publication of material that violates a person's right of privacy" and concluded that the "insurance policy provides coverage for sending unsolicited fax advertisements in violation of the TCPA." *Id.* at 1006–07. While the policy language analyzed in *Penzer* differs from the precise language here, and the *Penzer* court analyzed a policy provision providing coverage as opposed to limiting coverage, the Florida Supreme

7

Court's analysis nevertheless provides support for reading the B.4 Exclusion in the instant case to exclude TCPA violations, as a form of invasion of privacy, from coverage.

The Court also considers the Ninth Circuit's analysis in *Los Angeles Lakers, Inc. v. Federal Insurance Company*. 869 F.3d 795 (2017). There, the court evaluated the precise question before this Court – whether an exclusion from coverage of suits arising from an invasion of privacy also includes suits arising from TCPA violations. The court concluded that because "a TCPA claim is inherently an invasion of privacy claim, [the insurer] correctly concluded that Emanuel's TCPA claims fell under the Policy's broad exclusionary clause." *Id.* at 806. The concurring opinion would have reached a narrower result based on the TCPA-victim's specific allegations of invasion of privacy as part of his TCPA claim. *Id.* at 807 (Murphy, J., concurring). As this Court acknowledged in its Order Denying the Motion to Dismiss, DE 46, the Ninth Circuit's decision is not binding on this Court, and the decision in *Los Angeles Lakers* split the panel. However, the Ninth Circuit's analysis is persuasive authority.

The Eighth Circuit Court of Appeals has also analyzed the relationship between the TCPA and invasion of privacy in *Universal Underwriters Insurance Company v. Lou Fusz Automotive Network*. 401 F.3d 876 (2005). There, the court examined whether an insurance policy that defined an "injury" as including "invasion[s] of rights of privacy" covers a lawsuit alleging TCPA violations. Like the Florida Supreme Court and the Ninth Circuit, the *Lou Fusz* court concluded that "it is clear that Congress viewed violations of the Act as 'private nuisances' and as 'invasions of privacy' under ordinary, lay meanings of these phrases." *Id.* at 881. As a result, the court held that it would not "restrict the undefined terms [including invasion of privacy]" to exclude TCPA violations and held that a TCPA violation was an "injury" under the insurance policy. *Id.* at 881.

In *Resource Bank v. Progressive Casualty Insurance Company*, the Eastern District of Virginia also concluded that a policy exclusion for "invasion of privacy" included TCPA claims. 503 F. Supp. 2d 789 (2007). There, "invasion of privacy" was included among a list of tort claims

8

excluded from coverage, including defamation and slander, similar to Exclusion B.4 in the Policy at issue here. *Id.* at 795. Still, the court found that the "TCPA claims' concern with seclusional privacy place[d] them squarely within the bounds of Exclusion A." *Id.* The court there concluded that summary judgment was appropriate in favor of the defendant insurer, because "[p]roperly interpreted, Exclusion A can be clearly understood to exclude coverage for the injuries claimed in the TCPA Class Actions." *Id.* at 797.

Importantly, the Policy here excludes claims that *arise out of* an invasion of privacy. The Florida Supreme Court has held that the words "arising out of" in an insurance policy are unambiguous and absolute in scope. *Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co.,* 913 So. 2d 529, 532-33 (Fla. 2005). In *Taurus Holdings*, the Court recognized that "[t]he term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Id.* Thus, applying the definition of "arising out of" in *Taurus Holdings* to the Policy language here, if the *iCan Action* or its causes of action, expressly or by incorporation, originated from, grew out of, flowed from, or merely *had a connection with* any actual or alleged invasion of privacy, the Claim is not covered under the Policy. Based on the allegations in the *iCan Action*, the Court finds that such a nexus does exist.

Coupling the case law cited above that interprets TCPA violations as invasions of privacy with Florida's broad interpretation of "arising out of," the Court finds that the TCPA violations at issue here *arise out of* an invasion of privacy and therefore are excluded from coverage under Exclusion B.4.[1] Here, the underlying complaint in the *iCan Action* explicitly states that the class action plaintiffs' privacy was invaded by the violative texts, so the Court need not determine

---

[1] The Court acknowledges that this conclusion varies in some respects from the Court's conclusion in its Order Denying the Motion to Dismiss. However, the Court has been provided with additional arguments and has conducted additional research, which make this conclusion appropriate. In addition, the analysis of a case at the motion to dismiss stage is procedurally different from the analysis at the summary judgment stage.

9

whether TCPA violations are *per se* invasions of privacy, but instead concludes that on the facts before this Court, the Invasion of Privacy Exclusion would apply. Accordingly, there are at least some parts of the underlying class action that are excluded from coverage by virtue of the B.4 Exclusion.

The Court must next consider whether the entire *iCan Action* is excluded from coverage or whether just those aspects of the underlying case that involve invasion of privacy are excluded. Here, "Claim" is specifically defined by the Policy as "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading." DE 56-1, 15, § III, as amended by Endt. 11. Liberty argues that the defined term "Claim" is thus the entire underlying civil proceeding, not to be confused with the undefined word "claim," or its common-use derivatives, such as "harm," "damages," "causes of action" or the "separate allegations of wrongful conduct in a complaint." Regardless of whether the Court interprets "Claim" as referring to the entire action or just to individual counts contained within the Complaint, the Claim(s) all arise out of TCPA violations that invaded the class action plaintiffs' privacy. Throughout the underlying Complaint, Plaintiffs expressly alleged invasion of privacy as a basis for their lawsuit. *See* DE 111-3, ¶¶ 13, 16, 28, 39, & 63. Plaintiffs further represented that the *iCan Action* was "premised on violations of the TCPA, which caused actual harm to the Plaintiffs' class in the form of aggravation and nuisance and invasion of privacy." DE 16, 6. Plaintiffs also concede in their Statement of Facts that the "pertinent allegations" for the relief sought in the underlying Class Action include "actual harm and cognizable legal injury" caused by "invasions of privacy that result from the sending and receipt of such text messages . . . ." DE 107, ¶ 3(b)). Thus, the Claim – however defined – includes allegations that the *iCan* plaintiffs suffered the harm of invasion of privacy.

The Court concludes that the Policy's broad exclusion barring coverage for Claims arising out of an actual or alleged invasion of privacy precludes coverage here entirely. This is true regardless of whether Claim is viewed as the entire *iCan Action* as a whole or as separate Claims

10

for each cause of action. As a result, the Liberty Policy provides no coverage for the *iCan* settlement agreement, for which Plaintiffs seek indemnification.

C. Allocation

In the alternative, even if the broad definition of Claim did not preclude coverage over the entirety of the underlying action, Plaintiffs have failed to allocate the settlement agreement between covered and uncovered claims as required by Florida law.

Florida law is well-settled that the party seeking coverage for a settlement has the burden of proving that the settlement is covered under the insurance policy. *Bradfield v. Mid-Continent*, 143 F. Supp. 3d 1215, 1245 (M.D. Fla. 2015). If a lawsuit contains both covered and non-covered claims and damages, "Florida law clearly requires the party seeking recovery…to allocate any settlement amount between covered and noncovered claims." *Id.* The insured's "inability to allocate precludes recovery" against the insurer. *Trovillion Constr. v. Mid-Continent*, No. 6:12–CV–914–Orl–37TBS, 2014 WL 201678, at * 8 (M.D. Fla. Jan. 17, 2014); *see also Highland Holdings, Inc. v. Mid-Continent,* 687 F. App'x 819, 820 (11th Cir. 2017) (holding that the insurer owed no duty to indemnify its insured for a settlement agreement because the insured "could not prove how much it paid to settle any claims covered under its commercial general liability insurance policy."); *J.B.D. Const., Inc. v. Mid-Continent Cas. Co.*, 571 F. App'x 918, 928 n.7 (11th Cir. 2014) ("Under Florida law, [the insured] has the burden of allocating the settlement amount between covered and uncovered claims and the inability to do so precludes recovery."); *Keller Industries v. Empl. Mut. Liab. Ins. Co.*, 429 So. 2d 779, 780 (Fla. Dist. Ct. App. 1983) (affirming the lower court's refusal to award damages under the insurance contract based on a settlement entered into by the insured because "as the party claiming coverage, [the insured] had the burden, which it failed to carry, to apportion damages and show that the settlement, or portions thereof, represented costs that fell within the coverage provisions of the policy.").

Thus, even assuming that coverage is available under the Liberty Policy for the other, non-invasion of privacy harms identified in the *iCan Action*, Plaintiffs still cannot recover under the Liberty Policy because of their failure to allocate the lump sum settlement between covered and non-covered losses.

Plaintiff argues that this Florida law has been altered by the allocation provision in the Policy. The provision states:

> If in any Claim the Insureds who are afforded coverage for such Claim incur Loss jointly with others (including Insureds) who are afforded coverage for such Claim, or incur an amount consisting of both covered and uncovered matters, then the Insureds and the Insurer shall allocate such amount between covered Loss and uncovered loss as follows:
>
> a. 100% of such amount constituting defense costs shall be allocated to covered Loss
> b. all other amounts shall be allocated to covered Loss based upon the relative exposures of the parties to covered and uncovered matters.

DE 56-1, 9.

This provision does not contractually place the allocation burden on either party in the event of a coverage dispute. *See id.* It merely provides that in the event of covered and non-covered parties (*e.g.,* an insured director and a non-insured third party) or covered Loss (*e.g.,* costs for a shareholder derivative demand) and non-covered loss (*e.g.,* taxes, fines or penalties) in a single Claim, defense costs are recoverable and the Loss shall be allocated based on the relative legal exposure of the parties. *Id.* As Florida law makes clear, the burden remains on Plaintiffs to prove their damages by establishing the amount of Loss recoverable, if at all. *See PowerSports, Inc. v. Royal & Sunalliance Ins. Co.*, 307 F. Supp. 2d 1355, 1362 (S.D. Fla. 2004), *aff'd*, 128 F. App'x 95 (11th Cir. 2005); *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 616 (S.D. Fla. 2013) (rejecting insureds' position as inconsistent with Florida law that an allocation clause should be construed as an exclusion on which the insurer should bear the burden). Thus, Plaintiffs bear the burden to show what portion of the settlement and judgment, if any, was

unrelated to invasion of privacy or any other excluded conduct before they can recover at all. Plaintiffs have not met this burden, and their "inability to do so precludes recovery." *J.B.D. Const.*, 571 F. App'x at 928 n.7.

Plaintiffs seek to avoid this result by arguing that Liberty waived the allocation issue by failing to raise it as a coverage defense in its denial of coverage letters to the *iCan* plaintiffs, in violation of the Claims Administration Statute ("CAS"), §627.426, Fla. Stat. The Plaintiff's argument is unavailing.

First, the statute does not apply to the allocation/apportionment issue. The CAS provides that an insurer can be estopped from denying coverage based on the non-disclosure of a "coverage defense." Both federal and state cases, including the Florida Supreme Court, have narrowly construed the term "coverage defense" to include defenses to coverage where coverage would otherwise exist, such as the insured's breach of a contractual policy condition. *AIU Ins. Co. v. Block Marina*, 544 So. 2d 998, 1000 (Fla. 1989) (an insurer's "failure to comply with the requirements of the statute will *not* bar an insurer from disclaiming liability where a policy or endorsement has expired or where the coverage is expressly excluded or otherwise unavailable under the policy or existing law"); *EmbroidMe.com v. Travelers*, 845 F. 3d 1099 (11th Cir. 2017); *Lake Buena Vista v. Gotham Ins.*, 595 F. App'x 914 (11th Cir. 2014); *Sharp Gen. Contrs. v. Mt. Hawley*, 604 F. Supp. 2d 1360 (S.D. Fla. 2009); *Travelers v. Royal Oak*, 344 F. Supp. 2d 1358, 1370-71 (M.D. Fla. 2004). However, the CAS does *not* apply to on-point policy exclusions or issues that result in a complete lack of coverage. *Id.*

Here, the burden of an insured to allocate/apportion a settlement is established by the common law and is not a "coverage defense" under the CAS.

Furthermore, as this Court has recognized, waiver and estoppel may not be used to create coverage beyond the terms of the policy. *Twin City Fire Ins. Co. v. CR Tech.*, 90 F. Supp. 3d 1320

(S.D. Fla. 2015) (finding no waiver where insurer asserted coverage defense for the first time after jury verdict); *see also White Springs v. Gaffin Indus.,* No. 3:11–cv–998–J–32JRK, 2015 WL 1038375 (M.D. Fla. Mar. 10, 2015); *Aetna Cas. v. Deluxe Sys.*, 711 So. 2d 1293, 1295-96 (Fla. Dist. Ct. App. 1998). The only exception is promissory estoppel, when an insurer makes an affirmative representation/promise to induce the insured/promise into some action or forbearance. *White Springs,* 2015 WL 1038375; *Solar Time v. XL Specialty*, No. 02-23548-CIV-JORDAN, 02-23548-CIV-BROWN, 2004 WL 1683149 (S.D. Fla. June 15, 2004). Coverage by promissory estoppel "is an extraordinary remedy" that must be proven through "clear and convincing evidence." *Solar Time*, 2004 WL 1683149; *Great Am. v. Sanchuk*, No. 8:10–cv–2568–T–33AEP, 2012 WL 195526 (M.D. Fla. Jan. 23, 2012). In this case, Plaintiffs do not identify a promise that Liberty made to the insureds, on which they relied to their detriment.

Contrary to Plaintiffs' assertion, the Court finds that Liberty timely notified their insureds of the various coverage issues. *See* Def. SOF, ¶¶ 35–41 ("As set forth in the Reservations of Rights Letter, the denial of coverage for iCan's claim was based upon the Invasion of Privacy Exclusion. *Id.* at 3. The Reservation of Rights Letter explained that because the claim was 'based upon allegations that [Plaintiffs'] privacy rights were violated by the Insured sending unsolicited text messages, Exclusion B.4 is applicable and shall serve to exclude coverage for this matter in its entirety."). Having been expressly informed of the various coverage issues, including the invasion of privacy exclusion, the *iCan* plaintiffs and Plaintiffs here nonetheless proceeded with an unallocated settlement, to their peril. The Court concludes that estoppel does not apply in this case.

V. **CONCLUSIONS**

For all of the reasons stated above, the Court finds that there is no coverage in the Liberty Policy over the *iCan Action*, and Plaintiffs cannot recover the settlement or defense costs of that

14

action. The *iCan Action* is excluded from coverage by virtue of the invasion of privacy exclusion in Exclusion B.4. This exclusion bars coverage for the entire action based on the expansive definition of "Claim" in the Policy, and in the alternative, based on the Plaintiffs' failure to allocate the underlying settlement agreement. In light of the Court's findings above, the Court need not reach Liberty's additional arguments regarding the B.3 Exclusion. Nor must the Court reach Plaintiff's Motion for Summary Judgment, as the Court has concluded that there is no coverage for the *iCan Action*. Accordingly, summary judgment is granted in favor of Defendant.

It is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 108] is **DENIED**.

2. Defendant's Motion for Summary Judgment [DE 113] is **GRANTED**.

3. The Clerk of the Court shall **CLOSE** this case.

4. All pending motions are hereby **DENIED AS MOOT**.

5. Defendant Liberty is **ORDERED** to file and email to the Court (Rosenberg@flsd.uscourts.gov) a proposed Final Judgment Order within three business days of the rendition of this Order, copying opposing counsel.

**DONE and ORDERED** in Chambers at West Palm Beach, Florida, this 30th day of May, 2019.

Copies furnished to Counsel of Record      ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE